**EXHIBIT A**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| CHARLES A. BROWN,<br><br>    Plaintiff,<br><br>  v.<br><br>THE CHURCH INSURANCE CO.,<br>HARLEYSVILLE INSURANCE CO.,<br>and<br>NATIONAL UNION FIRE<br>INSURANCE CO. OF PITTSBURGH,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) C.A. No. 02C-06-196 RRC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: December 29, 2004
Decided: March 24, 2005

Upon Defendant The Church Insurance Co.'s
Motion for Summary Judgment. **DENIED.**

Upon Defendant Harleysville Insurance Co.'s
Motion for Summary Judgment. **GRANTED in part and DENIED in part.**

Upon Defendant National Union Fire Insurance Co. of Pittsburgh's
Motion for Summary Judgment. **GRANTED.**

## MEMORANDUM OPINION

Stephen B. Potter, Esquire and Jennifer-Kate Aaronson, Esquire, Potter, Carmine, & Leonard & Aaronson, P.A., Wilmington, Delaware, Attorneys for Charles A. Brown.

Daniel A. Griffith, Esquire, Marshall, Dennehay, Warner, Coleman & Coggin, Wilmington, Delaware Attorney for The Church Insurance Co.

Stephen P. Casarino, Esquire, Casarino, Christman & Shalk, Wilmington, Delaware, Wilmington, Delaware, Attorney for Harleysville Insurance Co.

Anthony G. Flynn, Esquire and Timothy Jay Houseal, Esquire, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware and John C. Sullivan, Esquire, Post & Schell, P.C., Philadelphia Pennsylvania, Attorneys for National Fire Union Insurance Co. of Pittsburgh.

COOCH, J.

## II. SUMMARY OF THE UNDERLYING LITIGATION

The relevant facts[1] of the separate but related litigation underlying this current lawsuit are as follows. "On June 1, 1994, Cathedral entered into a written contract with Capital, whereby Capital agreed to manage and maintain certain properties owned by Cathedral."[2] These properties included 2001 N. Market Street, where Brown was injured.[3] "Although the written contract expired in 1995, Capital continued to manage Cathedral's propert[ies].[4]" At trial, the jury found that even after that contract had expired, "Capital had agreed to assume the duty to maintain the exterior of 2001 N. Market Street and...the Wilmington City Code required [Capital] to maintain the fire escape [for Cathedral]."[5]

On August 23, 1999, the plaintiff, Charles Brown, was standing underneath an exterior fire escape attached to the side of 2001 N. Market Street. Brown touched the bottom step of the fire escape ladder, and the ladder section fell striking Brown on the head. He suffered a compound,

---

[1] The parties agree that there are no material facts in dispute in this subsequent litigation. The pertinent facts are stated as needed elsewhere in this opinion.

[2] *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1095 (Del. 2003).

[3] *Capital Mgmt. Co.*, 813 A.2d at 1095-96.

[4] *Capital Mgmt. Co.*, 813 A.2d at 1096.

[5] *Capital Mgmt. Co.*, 813 A.2d at 1098.

## III. STANDARD OF REVIEW

Summary judgment is granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[7] The Court must view the facts in a light most favorable to the non-moving party.[8] In a case involving cross motions for summary judgment, the parties implicitly concede the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions.[9] Here, the parties agree that there are no material facts in dispute.

## IV. NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT AGAINST HARLEYSVILLE

### A. Contentions of the Parties.

#### 1. National Union's argument in support of its motion for summary judgment against Harleysville.

National Union argues that its policy issued to Church was a "Commercial Umbrella Policy" that provided excess umbrella liability coverage of $50 million

---

[7] Super. Ct. Civ. R. 56(c); *Burkhart v. Davies*, 602 A.2d 56 (Del. 1991).

[8] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[9] *Browning-Ferris, Inc. v. Rockford Enterprises, Inc.*, 642 A.2d 820, 824 (Del. Super. 1993) (holding that the parties implicitly concede the non-existence of factual disputes upon their filing of cross motions for summary judgment); *see Marra v. Wilson*, 2003 Del. Super. LEXIS 63 (holding that where there were cross-motions for summary judgment the parties implicitly conceded the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions).

5

Harleysville contends that either one of the two endorsements in its policy with Capital render Harleysville an excess carrier to any other available policy, i.e., the National Union policy. Harleysville argues that pursuant to the language in the "Amendment of Other Insurance Condition Occurrence Version" endorsement, which states that "the Harleysville policy is excess over any other primary insurance when the insured has been added as an additional insured by endorsement," Harleysville is excess coverage over National Union.[14] Harleysville also argues that pursuant to the language in the "Real Estate Property Managed" endorsement that "if the insured is a real estate manager [such as Capital Management Company] then Harleysville's policy is excess over any other valid and collectible insurance."[15]

### B. The Harleysville policy issued to Capital is not an excess coverage policy in relation to the National Union umbrella policy issued to Church.

The language of the insurance policy determines the nature and extent of the coverage afforded to an insured.[16] The interpretation of a contract, including an insurance contract, is a question of law to be decided

---

Summary Judgment at ¶ 1 (hereinafter "Harleysville's Resp. at _.").

[14] Harleysville's Resp. at ¶ 2.

[15] Harleysville's Resp. at ¶ 3.

[16] *Continental Ins. Co. v. Burr*, 706 A.2d 499, 500 (Del. 1998).

7

entitled to make a claim under that other primary insurance by virtue of the Harleysville insured having been added to the other primary insurance as an additional insured. The policy language specifically requires the Harleysville insured to have been added by attachment of an endorsement.

As correctly argued by National Union, the National Union policy is not a primary policy but is an umbrella or excess policy. The language of this amendment in the Harleysville policy does not contemplate the Harleysville policy being principally an umbrella policy like the National Union policy, but rather an excess carrier only when an insured has been added to another primary policy. In other words, the Harleysville policy transformed from a primary policy, which it was principally intended to be, to an excess policy when Capital was added to another primary policy. Also, Capital, as pointed out by National Union, was not added by an attachment of an endorsement to the Church policy; therefore, the condition precedent in the Harleysville policy [that Capital must be added as a named insured to another primary policy] was not met in order to trigger the amendment.

Additionally, the "Real Estate Property Managed" amendment states that Harleysville's policy "is excess over any other valid and collectible insurance available to [the insured]."[22] Harleysville's reading of this amendment would

---

[22] National Union Mot. for Sum. J. at Exhibit J.

9

## V. CHURCH'S MOTION FOR SUMMARY JUDGMENT AGAINST HARLEYSVILLE AND HARLEYSVILLE'S CROSS MOTION FOR SUMMARY JUDGMENT AGAINST CHURCH

### A. Facts pertinent to the Church and Harleysville cross motions for summary judgment.

Charles Brown was injured on August 13, 1999. On August 23, 1999, Capital notified Church of the accident.[23] Subsequent to the notice of the accident by Capital, Cathedral, Church's named insured, also notified Church of the claim and requested a defense and indemnity.[24] Church assigned Crawford & Company to investigate the claim and Church further assigned defense counsel to defend the litigation on behalf of Cathedral.[25]

Capital notified its primary insurer, Harleysville, of the accident on January 31, 2000.[26] After an investigation by the claims adjuster, Harleysville referred the defense of the claim to outside counsel.[27] Harleysville was told by Capital that the building owner (Cathedral) was self-insured.[28] Harleysville was aware that if Cathedral had outside

---

[23] Church Insurance Company's Mot. for Sum. J., Exhibit C (Deposition of Michael Lindgren) at 15-16.

[24] Church Mot. for Sum. J. at 4.

[25] *Id.*

[26] Church Mot. for Sum. J., Exhibit D (Adjuster Remarks for Claim S0-010295) at 1.

[27] *Id.*

[28] *Id.*

11

was potentially eligible for coverage under the real estate manager provision of the Church policy). On September 7, 2001, just three days before trial, Harleysville apparently decided that the Church policy would provide coverage to Capital as an additional insured and Harleysville made a demand to defend of Church.[35] Church refused the demand to defend submitted by Harleysville.

**B.    Contentions of the Parties.**

### 1. Church's argument in support of its motion for summary judgment.

Church argues that because Capital failed to comply with the notice provisions of the Church policy issued to Cathedral, Capital is not entitled to coverage under the Church policy. Church contends that under the terms of its policy with Cathedral, Capital, as an additional insured, was obligated to notify Church, "as soon as practicable," if Capital sought coverage under Cathedral's insurance policy with Church.[36] Church argues that Capital's tender of defense to Church days before the underlying trial was to begin was a breach of the notice provision and should disqualify Capital from coverage under the Church policy.

---

[35] Church Mot. for Sum. J., Exhibit D (Adjuster Remarks for Claim S0-010295) at 10.

[36] Church Mot. for Sum. J. at 8.

13

between Cathedral and Capital was one of property owner and real estate manager.

Harleysville further argues that the Church policy is the primary insurance and that Harleysville is an excess policy to Church and National Union.[40] Harleysville contends that either one of two endorsements in its policy with Capital render Harleysville an excess carrier to the Church policy. Harleysville argues that pursuant to the language in the "Amendment of Other Insurance Condition Occurrence Version" endorsement, which states that "the Harleysville policy is excess over any other primary insurance when the insured has been added as an additional insured by endorsement," Harleysville is excess coverage over Church.[41] Harleysville also argues that pursuant to the language in the "Real Estate Property Managed" endorsement that "if the insured is a real estate manager then Harleysville's policy is excess over any other valid and collectible insurance" and Capital was the property manager.[42]

### 3. Church's response to Harleysville's cross-motion for summary judgment.

Church responds that Capital was required to obtain insurance

---

[40] As this Court held in part IV of this opinion, National Union's motion for summary judgment has been granted, the Court holding that National Union's umbrella policy issued to Church was in excess of the Harleysville policy.

[41] Harleysville's Mot. for Sum. J. at 9, 10.

[42] *Id.* at 10.

Harleysville, which was Capital's primary insurer.[47] Church contends that Capital had decided to "knowingly forego" Church's assistance in defending itself and instead decided to rely on Harleysville to defend it.[48] Church argues that the "tender rule" for notice, which is advocated by Capital, contains an exception to the duty to defend that is triggered when an insured "properly tenders [its] defense . . . to another co-insurer or primary insurer."[49]

C.  **Church had a right and a duty to indemnify and to defend Capital; however, the duty to defend (but not to indemnify) Capital was waived by Harleysville when it undertook the defense of Capital and did not tender a defense to Church until immediately before trial.**

At the outset, this Court notes that neither insurance company, Church nor Harleysville, handled the claim or their respective insureds in an ideal manner. The post-judgment litigation in the instant case could have been avoided by better initial communication between the parties and their insureds, and with each other.

The Church and Harleysville motions for summary judgment, among other arguments, present four related arguments as to the relationship, rights and duties between Church and Capital. First, Harleysville is seeking

---

[47] Church's Answering Brief at 8.

[48] *Id.*

[49] *Id.*

presumably negotiated with Cathedral, should be ignored as "boilerplate." There is no justification to support Church's argument that part of the definition of "Insured" should be considered mere "boilerplate"; therefore, this Court holds that Capital was an additional insured under the clear language of the Church policy.

Church's motion for summary judgment is based, in large part, upon Capital's alleged failure to comply with the notice provisions contained in the Church policy.[50] Church was entitled to notice of an occurrence, claim, or suit by or for the insured as a condition precedent to Church providing coverage. However, the policy does not require notice from all insureds or from a potential insured. A secondary source states that "[w]here an insurer receives proper and timely notice of [an] accident from the named insured including particulars sufficient to identify the additional insured, it is not necessary that another notice be given by the additional insured."[51] This Court finds that this rule is in accord with the purpose of the notice

---

[50] The Church policy states:
    **INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT:**
        (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place, circumstances therefore, and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable. Appendix to Harleysville's Motion for Summary Judgment at Exhibit A.

[51] 13 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D §187:12 (1999).

insurance available to you."[55] This Court holds that the Church policy is "other valid and collectible insurance available to [Capital]," thereby making the Harleysville policy excess in relationship to the Church policy.

Harleysville is seeking summary judgment that Church had a duty to defend Capital in the underlying suit. This Court recently pointed out in *Home Insurance Co. v. American Insurance Group* that the Delaware Supreme Court has never decided what type of notice must be given to trigger the duty to defend.[56] In *Home Insurance Co*, this Court discussed the two prevailing views of what type of notice triggers the duty to defend, the Michigan rule and the New Hampshire rule. The Michigan rule involves a two-part test in which the insurer must receive notice of the claim and a request from the insured for assistance in defending the claim.[57] The New Hampshire rule requires only that the insured has put the insurer on notice of the claim and thereby implicitly tendering the defense."[58] In *White Mountain Cable Construction Corp. v. Transamerica Insurance Co.* the

---

[55] Appendix to Harleysville's Mot. for Sum J., Exhibit B (Harleysville's Commercial General Liability policy).

[56] *Home Insurance Co. v. American Insurance Group*, 2003 Del. Super. LEXIS 370 *12 (holding that "[t]he Delaware Supreme Court has never decided what type of notice must be given to trigger the duty to defend . . . [while] [o]ther jurisdictions are divided on the issue").

[57] *Home Insurance Co.*, 2003 Del. Super. LEXIS 370 *14.

[58] *Home Insurance Co.*, 2003 Del. Super. LEXIS 370 *12.

21

insurer not to involve itself in the litigation.[62] Where there is more than one available insurance policy and the insured has not tendered a defense uncertainty may arise as to whether the silence should be considered a waiver or not. The Illinois Supreme Court held that "[w]here the insurer has actual notice of a claim against its insured, it would not be required to interpret the insured's silence as a desire for assistance. [Citation omitted]. Rather, the insurer can simply ask the insured if the insurer's involvement is desired, thus eliminating any uncertainty on the question."[63] The duty placed on an insurer (to ascertain the insured's preference whether to be defended or not by the insurer) is one that may be satisfied by a "simple letter to the insured requesting clarification."[64]

Capital did not formally tender its defense to Church until right before trial was to begin in the underlying case; however, the notice of loss to Church triggered its duty to potentially defend.[65] Initially, Capital tendered its defense to Harleysville, it own primary insurer, prior to Church receiving notice of the claim. It appears that from this point onward until Harleysville

---

[62] *Cincinnati Companies v. West American Ins. Co.*, 701 N.E. 2d 499, 504 (Ill. 1998).

[63] *Cincinnati Companies*, 701 N.E. 2d at 504 (Ill. 1998).

[64] *Cincinnati Companies*, 701 N.E. 2d at 505 (Ill. 1998).

[65] The Illinois Supreme Court held that when the duty to defend is triggered by notice to the insurer, the insurer is "only potentially liable at this stage" depending on the insurer's investigation of the claim and whether the occurrence falls within the terms of the

23

insurer's benefit to have the claim settle within the primary insurer's policy limits. Therefore, the excess insurer "owes the primary [insurer] the contractual duty of cooperation and the common-law duty to mitigate damages."[70] An excess insurer "may be liable to the primary insurer for a portion of the excess loss sustained by the original insured when the excess insurer participates in the settlement negotiations and declines a settlement within the policy limits under circumstances indicating bad faith."[71]

This Court holds that as an insurer under the Church policy issued to Cathedral, Church had a duty to defend Capital. Capital had a right to be defended or to "knowingly" waive that defense. Capital tendered its defense to Harleysville, presumably because it did not know that it was an additional insured under the Church policy, and before Church had become involved in the claim, at which point it cannot be said that Capital "knowingly" waived its right to a defense from Church. Harleysville, as Capital's primary insurer, had a duty to defend Capital and as an excess insurer relative to the Church policy, a potential liability to Church for any excess coverage incurred by Church. After Harleysville became aware of Church's involvement in the action it was incumbent upon Harleysville to determine

---

[70] Appleman on Insurance 2d §136.10[B] (2003).

[71] Appleman on Insurance 2d §136.10[B] (2003).

25

policy limits of the Church policy and the resulting post-judgment interest on that amount. Having waived Capital's right to a defense from Church, Harleysville is responsible for the defense cost associated with its defense of Capital (including the post-trial costs associated with the case at bar) and does not have a right to be reimbursed for defense costs from Church.

### D. Conclusion

For the foregoing reasons Church's motion for summary judgment to declare Capital ineligible for coverage under Church's policy issued to Cathedral is **DENIED**; Harleysville's motion for summary judgment to declare Capital an insured under the Church policy and that the Church policy provides primary coverage is **GRANTED**; Harleysville's motion for summary judgment to declare that Church had the duty to defend Capital as an additional insured and that the Harleysville's policy is excess to National Union's policy is **DENIED**.

**IT IS SO ORDERED.**

*[signature]*

oc:   Prothonotary